BRACONS, APPELLANT, *v.* REGISTRAR OF SAN JUAN, RESPONDENT.

APPEAL from a Decision of the Registrar of Property Refusing to Record a Part of an Estate.

No. 292.—Decided February 1, 1917.

REAL PROPERTY—PERSONAL PROPERTY—LEX REI SITAE.—The most important reform made in 1902 by the Legislative Assembly of Porto Rico to the preliminary title of the former civil code was that relating to the modification of the statutes governing personal and real property by taking into account and applying the general principle of American civil law that rights affecting real property shall be regulated wholly by the law of the country wherein it is situated, whether such rights arise by contract or by inheritance.

ID.—ID.—HEIRS—SPANISH SUBJECT.—Under the principle established by the Revised Civil Code in force in Porto Rico, the rights of the heirs of a Spanish subject, a Catalán, to real property situated in this Island are governed by the laws of Porto Rico and not by those of Cataluña.

ID.—ID.—TREATY OF PARIS—SPANISH SUBJECTS.—Such modification of the Civil Code of Porto Rico is not inconsistent with Article IX of the Treaty of Paris, which secured to Spanish subjects residing in this Island the right, among

others, to remain in or leave the Island, reserving to them all their property
rights in either case, including the right to sell or dispose of their property
or its products subject to the laws applicable to other foreigners.

The facts are stated in the opinion.

*Mr. S. Abella Bastón* for the appellant.

The respondent appeared *pro se*.

MR. JUSTICE DEL TORO delivered the opinion of the court.

House No. 12 Tanca Street in the city of San Juan is re-
corded in the name of Salvador Baví Durall in the Registry
of Property of San Juan, Section 1. The said Baví Durall
died in Barcelona, Spain, on September 20, 1915, and his
widow, appellant Rosa Bracons y Vidal, sought to have the
ownership of the said house recorded in her name as the uni-
versal heir of her husband.

For that purpose the said Rosa Bracons presented in
the registry the last will of her husband made in Barcelona
on July 18, 1907; the certificate of his death; the certificate
of the death of Salvador Baví y Bracons who died in Bar-
celona on March 2, 1915; and an opinion by Attorney Victo-
rino Bisbal, of the Barcelona Bar, relative to the rights of
the said Rosa Bracons.

It appears from the will that the said Baví Durall de-
clared that he was a Catalonian, and therefore that the rights
of his succession should be governed by the laws of Cata-
lonia; that he bequeathed to his son Salvador Baví Bracons
and such other progeny as he might have at the time of his
death the legal portions to which they were entitled, and
named his wife, Rosa Bracons y Vidal, the universal heir
to all the residue of his real and personal property and choses
in action, present and future, whether situated in Spain or
in Porto Rico or in any other place, to have and to dispose
of freely. After setting forth the facts and the law of Cata-
lonia, Spain, applicable thereto, the said opinion contains
the following conclusions:

"A. That the distribution of the estate of Salvador Baví y Du-
rall must be governed by the *lex fori* of Catalonia. B. That the

will made by the said testator before a notary and two witnesses, summoned and requested to act as such, is perfectly valid.  C. That as the son of the testator predeceased the latter and left no heirs, he could not transmit any right.  D. That if the son had owned any property, his mother, Rosa Bracons, would be his universal intestate heir.  E. That the said Rosa Bracons, as heir, can freely dispose of the estate of her husband without any legal formality, and F. That the rights of the said heir are entitled to recognition by the laws of any country in which real property forming part of the estate is situated, and the proper records should be entered in the registries of property.''

The registrar entered the desired record only as to a third part of the house in question and refused to record the title to the remaining two-thirds for the following reasons:

''1. That the testator bequeathed to his son Salvador Baví Bracons and any other children he might have, the amounts to which they were entitled at law from his estate, which bequest became inoperative because the legatee predeceased the testator.  2. That section 10 of the Civil Code is applicable, this being a will made by a foreigner in his own country devising real property situated in this Island, and the extent of the successional rights of the heir, Rosa Bracons y Vidal, should be regulated by the provisions of the said code; and as it prescribes that the legal portion of the predeceased son is two-thirds of the estate, the designated heir is entitled only to the remaining one-third which, under its provisions, is at the free disposal of the testator.''

The present appeal was taken from that decision of the registrar and both the appellant and the respondent have filed lengthy briefs in support of their respective opinions.

The whole matter is reduced to the determination of one fundamental question; that is, which law controls—that of Catalonia or that of Porto Rico?

If it be the law of Catalonia, then the appellant is right, for as the distinguished lawyer of Barcelona, Victorino Bisbal, says—

''According to the Spanish civil law, a person may die partly testate and partly intestate, and when a legacy is not or cannot be accepted the intestate law controls in these circumstances; but in

the Province of Catalonia the Roman law, as set out in *Las Parti-das,* Laws III and XXXIII, Title IX, *Partida* 6, governs, and the right of increase is subject to the following rule: The portion left vacant by the co-heir and co-legatee is added to the portions to which the other heirs and legatees are entitled. Digest, Title II, Book VII, and Justinian Code, *De caducis tollendis,* Title LI, Book VI.

"And, inasmuch as 'By institution of heirs the total estate passes to the heir or heirs designated, although only a part thereof or a specified property may be bequeathed or devised to them' (Instit. par. 5 of Institution of Heirs, Title XIV, Book II; Ls. 7 and 62, D. of Div. Reg. Jur., Title XVII, Book L; L. 1, par. 4D. Institution of Heirs, Title V, Book XXVIII), it follows that as Salvador Baví named his wife as heir to all his estate except the legal portion to which his son was entitled, and the son died before taking his portion, the total estate should be understood to have passed to the wife of the testator, the mother of the son whose right to an undivided part of the estate did not become operative."

On the other hand, if the law in force in Porto Rico is applicable, we must agree with the registrar, for manifestly he could not record a complete transfer of the ownership of the said house in the name of the appellant on the authority of only the will and the certificates of death mentioned. It is a case to be decided first by the courts, which may hold that Rosa Bracons is entitled to the whole estate, or it may be that there are other heirs living.

Not long ago this court, by Mr. Justice Hutchison, delivered an opinion in *Colón et al.* v. *Registrar of Aguadilla,* 22 P. R. R. 344, which, in our opinion, disposed of the question involved by holding that the laws of Porto Rico are applicable.

Article 10 of the old Civil Code, of Spanish origin, reads as follows:

"Personal property is subject to the laws of the nation of the owner thereof; real property to the laws of the country in which it is situated.

"However, legal and testamentary successions, with regard to the order of succession, as well as to the amount of the successional rights and to the intrinsic validity of their provisions, shall be regu-

lated by the laws of the nation of the person whose succession is in question, whatever may be the nature of the property and the country where it may be situate.

"Biscayans, even though they reside in towns, shall continue subject, with regard to the property they possess in the level lands, to Law XV, Tit. XX, of the Fuéro de Vizcaya."

And the same article, as amended by the Legislative Assembly in 1902, provides only as follows:

"Personal property is subject to the laws of the nation of the owner thereof; real property to the laws of the country in which it is situate."

The reason for the change is given by the Code Commission that prepared the draft of the Revised Civil Code, which was submitted to the Assembly, in the following words:

"The most important reform made in the Preliminary Title of the Code is that respecting the restriction of the doctrine of real and personal situs, taking into account and applying the general principle of American law, that all rights respecting real property must be regulated, both as regards contracts and agreements made with respect thereto and the rights of inheritance, by the law of the country in which they are situated."

On these principles and after citing other statutory provisions applicable to the particular case then under consideration, together with the opinions of distinguished commentators and the decisions of this court in the cases of *Cruz* v. *Domínguez,* 8 P. R. R. 551, and *Amadeo* v. *Registrar,* 3 P. R. R. 134 (2d ed.), this court clearly outlined its course by deciding to apply unqualifiedly the American theory in Porto Rico; that is, that the *lex rei sitæ* is the rule which should be followed in determining the legal capacity of the parties in transactions involving real property. See the case of Colón, *supra.*

But the appellant maintains that the Legislature of Porto Rico is not empowered to change the law in so far as it may

refer to Spanish aliens, because their rights are guaranteed by Article IX of the Treaty of Paris, which reads as follows:

"Spanish subjects, natives of the Peninsula, residing in the territory over which Spain by the present treaty relinquishes or cedes her sovereignty, may remain in such territory or may remove therefrom, retaining in either event all their rights or property, including the right to sell or dispose of such property or of its proceeds; and they shall also have the right to carry on their industry, commerce and professions, being subject in respect thereof to such laws as are applicable to other foreigners. In case they remain in the territory, they may preserve their allegiance to the Crown of Spain by making, before a court of record, within a year from the date of the exchange of ratifications of this treaty, a declaration of their decision to preserve such allegiance; in default ·of which declaration they shall be held to have renounced it and to have adopted the nationality of the territory in which they may reside."

Disregarding the question of whether the appellant is entitled to take advantage of that article without having alleged that Bavi Durall resided in Porto Rico at the time of the change of sovereignty, we will proceed to determine the scope of the treaty on the point under consideration.

The War Department of the United States construed the said article, and its construction was published in Porto Rico for the information and guidance of those concerned, in General Order No. 47 of March 6, 1900. It is as follows:

"Article IX guarantees Spanish subjects the right to continue allegiance to the Spanish Crown and still remain in said territory, retain their rights of property, and to engage in business, which said rights are to · be exercised pursuant to the laws of the country applicable to other foreigners."

In this respect the treaty applied to Porto Rico the well-settled rule of international law that "The division of an empire or the annexation of territory does not affect vested property rights, and therefore a citizen of a country who owns land in the part of a country which withdraws from the mother country retains his right to alienate the land and

transmit it to his heirs although they may also be aliens to the new country." 1 R. C. L. 809; 31 L. R. A. 181, note; *Airhart* v. *Massieu,* 98 U. S. 491.

Now, does the acknowledgment of all the property rights of Spaniards, including the right to sell or dispose of their property and its proceeds, imply that the Legislature of Porto Rico, which was created by the Congress of the United States, cannot enact laws regulating the exercise of the acknowledged rights?

By no means, we think. Spaniards did not acquire an extraordinary privilege in this sense. The agreement of the two governments was just and proper in such cases. Spain knew that it was leaving in Porto Rico thousands of its subjects who owned large properties and obtained an express assurance that they should be allowed the full exercise of their property rights, but it could not and did not obtain an assurance that such exercise of rights should continue to be governed by it and not by the new sovereignty.

To regulate the exercise of a right is not to disclaim its existence. On the contrary. It follows that to apply a rule which is in force as to Frenchmen and Englishmen, and even to Porto Ricans and Americans, to Spanish subjects who own real property in Porto Rico, is not a violation of the solemn covenant of the treaty. What the Legislature considered good for the natives of the Island should be considered equally so for foreigners. We must presume that the Assembly legislates to promote the welfare and progress of the people who elect it or among whom it operates.

In view of the foregoing, we are of the opinion that the decision appealed from should be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.